# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| EARNEST D. BEACON, JR.,<br><br>                         Plaintiff,<br>v.<br><br>MICHAEL A. DITTMANN, CAPTAIN WILKE, CAPTAIN REYES, LT. WESNER, UNKNOWN *sued as Deputy Warden*, CAPTAIN TETZLAFF, MICHELLE SMITH, and CO HEFT,<br><br>                        Defendants. | Case No. 14-CV-136-JPS<br>7th Circuit Case No. 16-3545<br><br><br><br>**ORDER** |

       On September 14, 2016, the Court entered an order granting Defendants' motion for summary judgment and dismissed the case in its entirety. (Docket #75). On September 27, 2016, Plaintiff filed a notice of appeal. (Docket #77). On January 6, 2017, the Court of Appeals granted Plaintiff's request to proceed *in forma pauperis* on appeal. (Docket #88). The Seventh Circuit instructed this Court to assess an initial partial filing fee for Plaintiff's appeal. *Id.*

       To that end, the Clerk of the Court sent Plaintiff a letter on January 6, 2017, requesting that Plaintiff send a certified copy of his prison trust account statement for the past six months. (Docket #89). The trust account statement is used to calculate the amount of the partial filing fee pursuant to the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915(b)(1). The prisoner is

required under the PLRA to submit the statement after obtaining it from the appropriate official at his or her prison. *Id.* § 1915(a)(2).

On January 19, 2017, Plaintiff filed a motion related to obtaining his trust account statement. (Docket #90). He asserts that he submitted disbursement requests to the prison business office, asking that the copying costs for his trust account statement be taken out of his trust account. *Id.* He claims that his requests were ignored because he has no money in his trust account. *Id.* Plaintiff asks that this Court issue an order authorizing the prison to draw the copying costs out of Plaintiff's release account, which allegedly has sufficient funds to cover those costs. *Id.* For the reasons explained below, the request will be denied.

Wisconsin prisoners generally have two types of accounts: a "general account" and a "release account." The general account, also called a "trust account," receives a prisoner's pay and other income. Wis. Admin. Code (DOC) § 309.02(8). Prisoners can withdraw funds from this account while they are in state custody. *Id.* § 309.49(2). The release account, by contrast, cannot be accessed by a prisoner until he is released. *Id.* § 309.466(2). After "crime victim and witness assistance" payments have been made, *see id.* § 309.465, fifteen percent of a prisoner's pay goes into the release account until the balance reaches $500, *id.* § 309.466(1).

This Court permits prisoners to delve into their release account funds only very sparingly. In fact, the only generally recognized instance where this is allowed is when a prisoner needs release account funds to pay an initial partial filing fee. *See Spence v. McCaughtry*, 46 F. Supp. 2d 861, 863 (E.D. Wis. 1999). General litigation costs may not be paid from the release account. For

instance, in *Peace v. Larsen*, Case No. 15-cv-276-pp, 2016 WL 4126470, at *1 (E.D. Wis. Aug. 2, 2016), the court held that the prisoner could not use release account funds to pay for copying his medical records. The court reasoned that the federal PLRA, unlike its Wisconsin counterpart, allows a prisoner to pay filing fees associated with a civil action out of his release account but not litigation costs. *Id.* at *2; *Artis v. Meisner*, No. 12-cv-589-wmc, 2015 WL 5749785, at *5–7 (W.D. Wis. Sept. 30, 2015) (unlike the Wisconsin PLRA, "[t]he federal PLRA says nothing about costs"). The Third Circuit has come to a similar conclusion, noting that Section 1915 "does not exempt litigants from the costs of copying and filing documents; service of documents other than the complaint; costs, 28 U.S.C. § 1915(f)(1); expert witness fees. . .; or sanctions." *Porter v. Dep't of Treasury*, 564 F.3d 176, 180 n.3 (3d Cir. 2009) (internal citation omitted); *see also Czapiewski v. Thomas Doe*, Case No. 16-cv-426, 2016 WL 1733456, at *1 (E.D. Wis. Apr. 29, 2016) (denying prisoner use of his release account to pay for copying, postage, and other litigation costs).

This approach is consistent with the underlying purpose of the release account. "Denying prisoners the use of their release accounts to fund litigation costs also is prudent given that those accounts are 'restricted account[s] maintained by the [DOC] to be used upon the prisoner's release from custody.'" *Peace*, 2016 WL 4126470, at *2 (quoting *Artis*, 2015 WL 5749785, at *6). As the court in *Peace* noted, "[p]ermitting a prisoner to invade that account for litigation costs could reduce that prisoner's likelihood of success post-incarceration, especially if the prisoner is a frequent, or prolific, litigant." *Id.* (internal citation omitted). As the Seventh Circuit has observed,

"like any other civil litigant, [a prisoner] must decide which of [his] legal actions is important enough to fund." *Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003). The inmate is not at liberty to tap into his release account for litigation costs, and he must make his strategic calculus accordingly. *See Peace*, 2016 WL 4126470, at *2 .

Under this Court's longstanding approach to such matters, it is clear that Plaintiff cannot use his release account to pay for copying his trust account statement. Plaintiff would certainly be permitted to pay the initial partial filing fee for his appeal from his release account. However, that fee cannot be calculated and assessed until Plaintiff provides the Court with his trust account statement. The PLRA places the burden on him to obtain the statement. *See* 28 U.S.C. § 1915(a)(2). The cost of copying, while probably very slight, cannot be debited from Plaintiff's release account under the federal PLRA. Moreover, using Plaintiff's release account funds in this way would undermine the state's purpose in providing a release account in the first place. Put simply, the release account is not a backup litigation fund. Instead, it exists to help the prisoner reintegrate into the community upon release. If it is depleted through litigation, that important endeavor will be hamstrung.

For these reasons, the Court will deny Plaintiff's motion. He must provide the Court a certified copy of his trust fund account statement for the 6-month period immediately preceding the filing of his notice of appeal. The Court will grant him a short extension of time so that he can obtain the necessary funds for that purpose or make his decision about whether to pursue his appeal further. Plaintiff must file his trust account statement no

later than February 24, 2017, or his appeal may be dismissed. *See Robbins v. Switzer*, 104 F.3d 895, 897–98 (7th Cir. 1997) (if prisoner does not file the required trust account statement, "a court may dismiss the appeal without regard to his ability (or inability) to pay").[1]

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for usage of release account funds (Docket #90) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff shall submit his trust account statement as required by the PLRA no later than **February 24, 2017**. Failure to comply with this order may result in dismissal of this appeal.

Dated at Milwaukee, Wisconsin, this 26th day of January, 2017.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge

---

[1] This is not a case where the Court might assume Plaintiff is telling the truth about his lack of funds. When the case was originally filed in early 2014, the average monthly deposit in Plaintiff's trust account was $97.64 and the average monthly balance to the account was $105.41. Based on this information, the Court assessed, and Plaintiff paid, an initial partial filing fee of $21.08. It is impossible to say whether he has depleted his trust account funds during the pendency of this case. As such, this case is unlike *Sultan v. Fenoglio*, 775 F.3d 888, 889 (7th Cir. 2015), where it was obvious from the plaintiff's submissions that he had a large and persistent negative balance in his trust account. Moreover, in *Sultan*, the prisoner submitted a trust account statement in compliance with the court's order. *Id.* at 891.